# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

| | | |
|---|---|---|
| **KAYLA HELLAMNS**, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | CIVIL ACTION FILE |
| v. | ) | NO._____ |
| | ) | |
| **WAL-MART STORES EAST, LP** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| *Defendant*. | ) | |

## COMPLAINT

Plaintiff Kayla Hellamns ("Plaintiff") sets forth the following Complaint for damages against Defendant Wal-Mart Stores East, LP ("Wal-Mart" or "Defendant").

## INTRODUCTION

1. This action is for ADA discrimination and retaliation arising under the Americans with Disabilities Act of 1990 ("ADA") as amended, Title VII of the Civil Rights Act of 1964 as amended by the Pregnancy Discrimination Act of 1978 ("Title VII"), and The Pregnant Workers Fairness Act ("PWFA"). Plaintiff seeks declaratory and injunctive relief, back pay, front pay, compensatory damages, punitive damages, liquidated damages and attorney's fees and costs.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the present matter pursuant to 28 U.S.C. § 1331.

3. Venue is appropriate in this Court as, upon information and belief, the events complained of herein occurred within the geographic boundaries of the U.S. District Court for the Northern District of Georgia, and upon information and belief, all parties to this action reside within the geographic boundaries of the United States District Court for the Northern District of Georgia. Venue is proper pursuant to 28 U.S.C. § 1391 (b) and (c).

## PARTIES

4. Plaintiff is a former employee of Defendant.

5. Defendant is a foreign limited partnership registered to conduct business in the state of Georgia.

6. Defendant may be served through its registered agent if service of process is not waived:

> Registered Agent Name: **THE CORPORATION COMPANY (FL)**
> Physical Address: **410 Peachtree Parkway Suite 4245, Cumming, GA, 30041, USA**
> County: **Forsyth**

7. This Court has personal jurisdiction over Defendant.

- 3 -

## ADMINISTRATIVE PROCEEDINGS

8. On September 9, 2023, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendant.

9. On September 13, 2023, Plaintiff filed an Amended Charge of Discrimination with the EEOC.

10. On March 18, 2024, the EEOC issued Plaintiff her notice of right to sue.

11. Plaintiff has exhausted her administrative remedies prerequisite to the filing this suit.

12. Suit has been filed within 90 days of Plaintiff's receipt of her notice of right to sue.

## STATEMENT OF FACTS

13. Wal-Mart is a global retailer operating more than 10,500 stores and numerous eCommerce websites in 19 countries and employs more than 2 million associates.

14. Wal-Mart is an employer within the meaning of the ADA, the PWFA, and Title VII.

15. Wal-Mart had more than 50 employees within a 75-mile radius of the location in which Plaintiff was employed in each of 20 or more consecutive calendar weeks during each of the years of Plaintiff's employment.

16. Plaintiff was hired on or about September 18, 2022, as a digital personal shopper.

17. Plaintiff was a good employee with no disciplinary issues during the first 8 months of her employment.

18. On or about May 10, 2023, Plaintiff was approved for pregnancy-related accommodations, with an expected delivery date of December 13, 2023.

19. The restrictions imposed by her doctor included a 15-pound lifting limit with no excessive bending or prolonged standing.

20. Plaintiff largely had no issues with her accommodations for the first few months of her pregnancy with the exception of her coach, Jessica Sullivan ("Ms. Sullivan").

21. Ms. Sullivan often made comments to Plaintiff about Plaintiff's inability to lift heavy items, such as cat litter or water without assistance from another team member.

22. When Plaintiff reminded Ms. Sullivan about her approved accommodations, Ms. Sullivan would get mad and accuse Plaintiff of slowing the team down.

23. On or about August 9, 2023, Plaintiff had a seizure, and her physician found a tumor on her pituitary gland.

24. Plaintiff immediately called Sedgwick to request a medical leave of absence.

25. On or about August 10, 2023, Plaintiff was granted a continuous leave of absence for a pregnancy-related complication from August 9, 2023, until August 16, 2023.

26. On or about August 16, 2023, Plaintiff's physician called Wal-Mart to confirm that Plaintiff was clear to return to work on the expected date of August 17, 2023.

27. Plaintiff also had written documentation from her provider that she was cleared to return to work on August 16, 2023.

28. When Plaintiff attempted to check her schedule for work the week of August 17, she had no days scheduled and her PTO time had been removed.

29. Plaintiff reached out to team lead Jessica Milton ("Ms. Milton") and Ms. Sullivan to inquire about her schedule and why her PTO had been removed.

30. Ms. Milton informed Plaintiff that she was not sure what was going on, but that Plaintiff needed to report to work on her return date (August 17, 2023).

31. Upon information and belief, Plaintiff reported to work on August 17, 2023, based on information she was given by Sedgwick, her physician, and Ms. Milton.

32. Ms. Milton also told Plaintiff to reach out to Ms. Sullivan for next steps.

33. When Plaintiff texted Ms. Sullivan, Ms. Sullivan admitted via text message that she did not read the dates accurately on Plaintiff's leave forms and was not expecting her to return on her clearance date of August 17, 2023.

34. Further, Ms. Sullivan responded that Plaintiff would need to find something else in the store to do because of her pregnancy, stating that Plaintiff "can't perform the job right now and we have to transfer you until it's safe and your [sic] about to do the job."

35. Plaintiff did not understand this since her pregnancy accommodations prior to her week-long absence had been sufficient and she was completing her job in a satisfactory manner, and she had been cleared by her physician to return to work with the same pregnancy accommodations she'd been working under.

36. Ms. Sullivan also continued to tell Plaintiff that her physician did not clear her (even after Plaintiff provided documentation stating that she could return to work) and that the restrictions she was given did not work within the department when they were the same restrictions she'd had prior to her week-long medical leave.

37. Ms. Sullivan also told Plaintiff that she needed to speak with "Michelle" in Human Resources.

38. Plaintiff reached out to Michelle and asked why she was being moved out of her department.

39. Michelle told Plaintiff that she was unsure of what was going on and that she had no idea why Ms. Sullivan told Plaintiff she had to find another department.

40. Michelle eventually told Plaintiff that she needed to pick either a cashier position or a position in apparel.

41. Further, Michelle told Plaintiff that she would have to take a pay cut and that her hours were no longer guaranteed.

42. Plaintiff explained that she did not feel comfortable having to pick a new position that she had no information about when her position prior to her week-long leave should have been guaranteed.

43. When Plaintiff reported this interaction to Ms. Milton, Ms. Milton's response was, "Really???," showing that her own Team Lead was unaware of any reason why Plaintiff should be moved from her department.

44. Further, Plaintiff told Michelle that she felt she was being bullied and discriminated against by Ms. Sullivan.

45. Plaintiff reached out to Ms. Sullivan again and asked why she needed to move to another department.

46. Ms. Sullivan responded that it had to do with the weight limits for picking orders; however, Plaintiff was told by Michelle that all departments would have the same requirements as to lifting items with her pregnancy accommodations.

47. Additionally, Plaintiff had already been working in the same department with her lifting restrictions for four months prior to her week-long medical leave without any performance issues.

48. Plaintiff also knew of at least two other employees in her department that were also pregnant and were not being forced to find another department.

49. When Plaintiff questioned Ms. Sullivan about this, Ms. Sullivan told her that she needed to worry about herself and not other people.

50. Prior to this, Plaintiff made an anonymous report that Ms. Sullivan put her hands on her; however, Ms. Sullivan seemed to know that it was Plaintiff and kept bringing it up while Plaintiff was trying to figure out why she was being moved from her department.

51. In fact, Ms. Sullivan sent a text to Plaintiff that she wasn't moved prior to her medical leave because "I got told you felt like I was bullying you…but now it's for your health and the babies [sic] health…" despite this not being the opinion of her physician.

52. Plaintiff was not allowed to return to work on August 17 and was falsely told that she did not present the necessary medical clearance.

53. Further, Plaintiff noted that her name had been completely removed from the employee calendar showing future approved time off, which made Plaintiff believe that Wal-Mart was anticipating that she would no longer be employed.

54. However, as mentioned above, Plaintiff's OB/GYN phoned Wal-Mart and/or Sedgwick to report that she was clear to return to work.

55. Upon information and belief, Plaintiff felt that she was being forced to move in a retaliatory act by Ms. Sullivan.

56. Plaintiff did not hear anything from Wal-Mart after her attempt to return on August 17, 2023.

57. On or about September 6, 2023, Plaintiff called Wal-Mart under the belief that she was not going to be given an opportunity to return to her position and that she could not afford to continue being without employment.

58. Upon information and belief, Plaintiff felt she had been constructively terminated.

59. The close temporal proximity between Plaintiff's leave of absence and expected return to work date and being told she had to move departments is clearly indicative that pretext exists in Defendant's reasoning for her constructive termination.

**COUNT I**

## VIOLATION OF ADA

60. Plaintiff incorporates by refence each and every preceding paragraph of this Complaint.

61. Plaintiff had a disability as defined by the ADA.

62. As detailed above, Plaintiff notified Defendant of his disability and asked for accommodations when she found out she was pregnant.

63. Defendant offered reasonable accommodations at that point.

64. However, Plaintiff's supervisor, Ms. Sullivan, bullied Plaintiff for needing extra help with lifting heavy items, accusing her of slowing the team down.

65. When Plaintiff then developed a complication with her pregnancy and required a short medical leave of absence, her supervisor used that as pretext to try and force her to move to a different department despite her ability to meet the accommodations that were previously approved by Defendant.

66. Defendant's actions violated the ADA.

67. As a direct and proximate result of Defendant's intentional discrimination, Plaintiff has suffered damages, including but not limited to lost pay, job benefits, emotional distress, and all other damages allowed by law.

## COUNT II

## GENDER DISCRIMINATION IN VIOLATION OF TITLE VII

68. Plaintiff incorporates by reference the preceding Paragraphs as if fully restated herein.

69. As a female, Plaintiff is a member of a protected group.

70. As detailed above, after notifying Defendant of her pregnancy, Plaintiff was subjected to harassment and a hostile work environment by her direct supervisor.

71. All the above conduct by was unwelcome, offensive, and intimidating to Plaintiff as well as open and obvious in the workplace.

72. Plaintiff complained that the discriminatory and harassing conduct was unwelcome.

73. Defendant willfully and wantonly disregarded Plaintiff's rights.

74. Additionally, Defendant's discrimination and retaliation against Plaintiff was undertaken in bad faith and constitutes unlawful, intentional gender discrimination in violation of Title VII.

75. As a result of Defendant's unlawful actions, Plaintiff has suffered emotional distress, inconvenience, loss of income and benefits (past and future), humiliation, and other indignities.

76. Plaintiff seeks all remedies available by law or equity.

## COUNT IV

## VIOLATION OF THE PWFA

77. Plaintiff incorporates by refence each and every preceding paragraph of this Complaint.

78. Plaintiff had a known limitation related to, affected by, and/or arising out of pregnancy, childbirth, or related medical condition and communicated said limitation to Defendant.

79. Plaintiff's known limitation is covered by the PWFA whether or not such condition meets the definition of disability specified in the ADA.

80. Further, the PWFA assures that an employee shall be considered qualified for a position if any inability to perform an essential function is for a temporary period, so Plaintiff's accommodations are required to be met even if she did not meet the "essential" function of lifting up to 50 pounds.

81. The PWFA also ensures that Plaintiff should be protected from being required to accept an accommodation other than the reasonable accommodated arrived at through the iterative process (the lifting, bending, and standing restrictions).

82. Forcing Plaintiff to take a new position in another department without a guarantee of hours or receiving the same pay should, therefore, be disallowed.

83. Further, Defendant cannot take adverse action against Plaintiff on account of Plaintiff's request for and use of reasonable accommodations.

84. Defendant's actions violated the PWFA.

85. As a direct and proximate result of Defendant's intentional discrimination, Plaintiff has suffered damages, including but not limited to lost pay, job benefits, emotional distress, and all other damages allowed by law.

## COUNT IV

## RETALIATION

86. Plaintiff hereby incorporates each and every preceding paragraph as if set forth fully herein.

87. Plaintiff engaged in protected activity under the ADA, Title VII, and the PWFA.

88. As detailed above and in response, Defendant retaliated against Plaintiff.

89. Specifically, Plaintiff was retaliated against when Plaintiff attempted to return from a medical leave of absence and was told she would have to move departments and would no longer be guaranteed 40 hours per week and would have to take a pay cut.

90. Defendant's actions constitute unlawful retaliation in violation of all the above cited statues.

91. Defendant willfully and wantonly disregarded Plaintiff's rights and Defendant's retaliation against Plaintiff was undertaken intentionally and in bad faith.

92. As a result of Defendant's unlawful actions, Plaintiff has suffered lost compensation and other benefits of employment, significantly diminished employment opportunities, emotional distress consisting of, but not limited to, outrage, shock, and humiliation, inconvenience, loss of income, and other indignities.

WHEREFORE, Plaintiff demands a trial by jury and for the following relief:

(a) a declaratory judgment that Defendants have engaged in unlawful employment practices in violation of the ADA, Title VII, and PWFA;

(b) an injunction prohibiting Defendants from engaging in unlawful employment practices in violation of the ADA, Title VII, and PWFA;

(c) full back pay from the date of Plaintiff's constructive termination, taking into account all raises to which Plaintiff would have been entitled but for her unlawful termination, and all fringe and pension benefits of employment, with prejudgment interest thereon;

(d) front pay to compensate Plaintiff for lost future wages, benefits, and pension;

(e) liquidated damages and compensatory damages, in an amount to be determined by the enlightened conscience of the jury, for Plaintiff's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

(f) punitive damages in an amount to be determined by the enlightened conscious of the jury to be sufficient to punish Defendants for its conduct toward Plaintiff and deter it from similar conduct in the future;

(g) reasonable attorney's fees and costs; and

(h) nominal damages and any other and further relief as the Court deems just and proper.

Respectfully submitted this 17th day of June, 2024.

/s/ J. Stephen Mixon
J. Stephen Mixon
Georgia Bar No. 514050
steve@mixon-law.com
Attorneys for Plaintiff

THE MIXON LAW FIRM
3344 Peachtree Rd. Suite 800
Atlanta, GA 30326
Telephone: (770) 955-0100
Facsimile: (678) 999-5039